**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.: 1:26-cv-27941-KMM**

**CLASS ACTION**

**ZACKARY MULLER,** *individually and on behalf of all others similarly situated,*

**Plaintiff,**

**v.**

**DOORDASH, INC.,**

**Defendant.**

______________________________/

**FIRST AMENDED CLASS ACTION COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

Plaintiff, Zackary Muller ("Plaintiff"), individually and on behalf of the proposed Class, Subclass, and Florida Subclass defined below, files this First Amended Class Action Complaint against DoorDash, Inc. ("DoorDash" or "Defendant"). Plaintiff alleges the facts concerning his own experiences on personal knowledge and other matters on information and belief based on the investigation of counsel, as follows:

## NATURE OF THE ACTION

1. DoorDash repeatedly called Plaintiff's personal cellular telephone using a prerecorded voice. The messages asked whether a store was open and warned that customers could lose the ability to place DoorDash orders. Plaintiff did not represent the store.

2. Plaintiff told DoorDash that the calls were reaching him in error and asked that they stop. On October 28, 2024, DoorDash Escalated Support confirmed in writing, under reference number 656659996, that he would receive no further calls. Merchant-status voicemails followed on October 29 and 30, 2024, from (628) 800-0182 and (628) 800-0576, respectively. Substantially similar prerecorded merchant calls continued through at least August 25, 2026.

3. Plaintiff brings this action under 47 U.S.C. § 227(b)(1)(A)(iii) for calls using an artificial or prerecorded voice to cellular telephones without prior express consent. Plaintiff also brings a claim under Florida common law for invasion of privacy by intrusion upon seclusion.

4. Plaintiff seeks damages individually and on behalf of a class of persons who received DoorDash's prerecorded merchant-status calls after asking DoorDash to stop them, a subclass of persons who received such calls after DoorDash confirmed in writing that the calls would stop, and a subclass of those confirmed-removal recipients who resided in Florida. Plaintiff seeks an increase in damages for violations proven to have been knowing or willful, together with injunctive and declaratory relief to prevent the calls from resuming. Plaintiff and the Florida Subclass also seek compensatory and punitive damages for DoorDash's intrusion upon their seclusion.

**JURISDICTION AND VENUE**

5. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claim arises under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

6. This Court has supplemental jurisdiction over Plaintiff's Florida common law claim under 28 U.S.C. § 1367(a) because that claim arises from the same calls as Plaintiff's TCPA claim and forms part of the same case or controversy under Article III of the United States Constitution.

7. This Court has specific personal jurisdiction over DoorDash. DoorDash placed, or caused to be placed, the challenged calls to Plaintiff's cellular telephone, and Plaintiff received them in his home in Miami-Dade County, Florida. DoorDash continued directing those calls to Plaintiff after he told DoorDash that the calls were reaching him in error and after DoorDash acknowledged his request in writing. Plaintiff's claims arise from those calls, and DoorDash thereby committed the alleged statutory violations and tortious acts in Florida within the meaning of Fla. Stat. § 48.193(1)(a)(2).

8. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, including his receipt of the challenged calls. Plaintiff resides in Miami Beach, Florida.

## PARTIES

9. Plaintiff Zackary Muller is a natural person residing in Miami Beach, Miami-Dade County, Florida.

10. During the relevant period, Plaintiff was the subscriber and regular user of the personal cellular telephone number ending in 6959 (the "Subject Number"). The Subject Number was assigned to cellular telephone service when the challenged calls were made.

11. DoorDash, Inc. is a Delaware corporation with its principal place of business in California. It operates a delivery platform connecting consumers, merchants, and delivery personnel, including in Florida.

## FACTUAL ALLEGATIONS

### The Calls Concerned Another Business

12. Plaintiff did not own, operate, or represent the merchant addressed by the calls.

13. Plaintiff did not give DoorDash the Subject Number as the contact number for a restaurant or store and did not authorize any merchant or other person to provide it as a merchant contact number or to consent on his behalf to merchant-status calls. He did not agree to receive prerecorded calls about another business's operating status or ability to accept DoorDash orders.

14. The calls concerned another business's ability to accept orders. They did not concern any order Plaintiff placed, any delivery he received, or any consumer service he requested. DoorDash placed the calls to the Subject Number as a purported merchant contact for another business, not in connection with Plaintiff's own DoorDash orders, deliveries, or account activity.

### The Merchant Calls Used a Repeated Prerecorded Script

15. On September 20, 2024, at approximately 8:01 a.m., DoorDash called the Subject Number from (415) 969-2065 and left a prerecorded voicemail.

16. The phone's displayed transcription of that voicemail includes: "Location is open press one if your store location is closed press two to let us know if you believe you have received this call in error and would like to be opted out please go to

help.doordash.com/s/opt out and our team can assist." Representative voicemail screenshots are attached as Exhibit C.

17. Over the following months, Plaintiff received substantially similar prerecorded merchant-status messages multiple times per week, most often between approximately 8:00 a.m. and 9:00 a.m. The displayed transcriptions of Plaintiff's preserved voicemails repeat the same store-status prompts and DoorDash opt-out instructions. The recorded messages Plaintiff reviewed used the same recorded voice and generic wording, were not addressed to Plaintiff by name, offered an automated keypad menu ("press one" or "press two"), and did not connect Plaintiff to a live representative. Messages with the same prompts arrived from dozens of different calling numbers. These characteristics show that the messages were prerecorded rather than spoken live.

18. DoorDash's script anticipates that its merchant-status calls may reach people who are not the merchant: it instructs any recipient who believes the call was "received . . . in error" to opt out at "help.doordash.com forward slash S forward slash opt out." *See* Exhibit I. On information and belief, DoorDash maintains records of the opt-out requests submitted in response. On or about October 7, 2024, when Plaintiff attempted to reach the opt-out address given in the messages, DoorDash's help site displayed an error page stating that the page could not be found ("error code: 404"). Plaintiff instead used DoorDash's own support channels. The DoorDash representatives who received and processed his requests never directed him to the opt-out webpage or to any other procedure.

**DoorDash Acknowledged Plaintiff's Request to Stop the Calls**

19. Plaintiff repeatedly asked DoorDash support to stop the morning calls. On or about October 5, 2024, in a DoorDash Support chat, Plaintiff wrote that DoorDash was calling

him every morning at 8:00 a.m., that he had "made multiple requests to stop receiving these calls," and demanded that DoorDash make the calls stop. *See* Exhibit D. DoorDash's chat system responded, "Request processed." In a second DoorDash Support chat the same morning, Plaintiff again asked DoorDash to stop calling him at 8:00 a.m., stating that he had asked weeks earlier that the calls stop. *Id.* He sent the agent a screenshot of his call log showing an 8:00 a.m. call on October 2, 2024, identified as "DoorDash," and provided the Subject Number. The agent responded, "This is not at all right we apologize," stated that the agent would take a case note, and wrote: "Be assured team will make sure that from now on wards no call be made." During the same period, Plaintiff also asked DoorDash representatives by telephone to stop the calls.

20. The calls continued. On October 28, 2024, at approximately 5:45 p.m., Plaintiff contacted DoorDash Support by chat again, told DoorDash that he had asked it "several times to stop calling" him, and asked that the calls stop. The DoorDash representative apologized for the calls. By that date, Plaintiff had told DoorDash that he was receiving the merchant calls in error and was not a merchant, and had requested that DoorDash stop calling him.

21. Minutes later, Plaintiff and DoorDash Escalated Support exchanged emails under reference number 656659996. At 5:50 p.m., DoorDash wrote that Plaintiff's concern had been "highlighted to our team so the issue will never happened again." Because that message misstated whether the calls would stop, Plaintiff replied in writing at 5:52 p.m. that DoorDash had meant to say he would "NOT get calls" and asked DoorDash to rewrite its message. At 5:55 p.m., DoorDash Escalated Support emailed Plaintiff again under the same reference number. *See* Exhibit A.

22. The email states: "As per your request I have submitted the feedback as you will not receive any calls from doordash in future, your request is submitted successfully you will not recieve any calls from now." It identifies the reference number as 656659996.

23. In the alternative, to the extent any revocable consent extended to these calls, Plaintiff withdrew it when he asked DoorDash to stop calling. DoorDash agreed in writing to stop.

24. Plaintiff did not thereafter ask DoorDash to resume merchant-status calls or provide new permission to call the Subject Number as a merchant contact.

25. Plaintiff's October 2024 requests told DoorDash that its merchant-status calls were reaching him in error, and DoorDash's October 28, 2024 email acknowledged in writing that his request had been processed and that he would receive no further calls. From that point forward, DoorDash had actual notice that Plaintiff did not consent to the calls.

**The Calls Continued After DoorDash's Written Assurance**

26. Substantially similar prerecorded merchant calls continued after October 28, 2024. On the next two days, the calls again asked whether the store was open or closed. Plaintiff's preserved voicemail records identify further calls during 2025 and 2026, including August 24 through August 26, 2025; May 12, 15, 17, 20, 23, 25, and 27, 2026; and June 24, 2026.

27. On June 24, 2026, at approximately 8:00 a.m., a call from (650) 316-8351 left a voicemail warning that customers would no longer be able to place a DoorDash order for the remainder of the day unless an issue was resolved. It then asked the recipient to press one if the store was open or two if it was closed, and directed an erroneous recipient to DoorDash's opt-out support address. *See* Exhibit C.

28. Exhibit B shows an incoming call labeled "DoorDash" while the phone displays a voicemail from a different number referring to customers' ability to place a DoorDash order.

29. On August 25, 2025, Plaintiff's carrier recorded an incoming call at approximately 8:00 a.m. from (650) 830-0392. His voicemail list displays entries that day from that number and from (510) 901-5366.

30. Plaintiff's voicemail list displays six merchant-message entries dated February 19, 2026, from four different calling numbers. It displays four entries dated March 7, 2026, and four dated March 12, 2026. *See* Exhibits E, H.

31. The calls continued into July 2026. A preserved voicemail list displays merchant-status messages dated July 19, July 23, July 28, and July 30, 2026, from (415) 936-8210, (628) 800-0182, (650) 727-9697, and (415) 843-8884, respectively. That screenshot is attached as Exhibit F.

32. Plaintiff continued to receive merchant-status messages after blocking individual numbers. His blocked voicemail list includes messages dated July 17, 18, and 20, 2026. *See* Exhibit G.

33. From September 20, 2024 through August 25, 2026, DoorDash placed at least 856 prerecorded merchant calls to the Subject Number. Each of those calls is documented by date and calling number in Plaintiff's preserved voicemail records: 71 voicemails from 2024, 333 from 2025, and 216 from 2026 left by numbers Plaintiff had not blocked; 197 left by numbers Plaintiff had blocked; and 39 preserved in his deleted-voicemail folder.

Calls that left no voicemail are not included in that figure. Plaintiff seeks recovery once for each distinct unlawful call, counting a call and its resulting voicemail only once.

Approximate Call Counts by Displayed Calling Number

34. Table 1 identifies the 856 documented calls by the 37 displayed calling numbers from which they were placed.

35. Each figure in Table 1 counts calls documented by date and calling number in Plaintiff's preserved voicemail records. Separate calls from the same number on the same date are counted separately. Calls that left no voicemail are not included.

TABLE 1 DOCUMENTED CALLS BY DISPLAYED NUMBER

| **Displayed calling number** | **Documented calls amount** |
|---|---|
| (415) 275-6644 | 20 |
| (415) 304-8448 | 25 |
| (415) 805-6642 | 32 |
| (415) 843-8072 | 15 |
| (415) 843-8803 | 21 |
| (415) 843-8884 | 35 |
| (415) 843-8896 | 17 |
| (415) 877-5866 | 29 |
| (415) 936-8210 | 33 |
| (415) 969-2065 | 31 |
| (415) 969-2198 | 21 |

| | |
|---|---|
| (415) 991-6684 | 35 |
| (415) 993-5232 | 26 |
| (415) 994-0340 | 1 |
| (415) 996-1483 | 26 |
| (510) 901-5366 | 23 |
| (628) 444-4841 | 17 |
| (628) 600-0930 | 24 |
| (628) 800-0149 | 20 |
| (628) 800-0182 | 24 |
| (628) 800-0576 | 21 |
| (650) 229-5442 | 22 |
| (650) 235-4660 | 19 |
| (650) 316-8351 | 28 |
| (650) 389-5634 | 28 |
| (650) 458-4388 | 22 |
| (650) 469-8598 | 24 |
| (650) 600-9935 | 18 |
| (650) 727-1092 | 27 |
| (650) 727-1120 | 19 |
| (650) 727-9253 | 24 |
| (650) 727-9697 | 25 |

| | |
|---|---|
| (650) 727-9885 | 23 |
| (650) 727-9954 | 26 |
| (650) 830-0392 | 15 |
| (650) 855-8605 | 27 |
| (832) 847-6640 | 13 |
| **Total** | **856** |

36. Plaintiff's preserved voicemails from the 37 displayed calling numbers repeat the merchant-status prompts, store-open/store-closed instructions, or warnings concerning DoorDash order availability described above. That recurring content, together with DoorDash's support communications, supports Plaintiff's allegation that the challenged calls were part of DoorDash's merchant-status calling program. On information and belief, each displayed number was used by or on behalf of DoorDash to place the merchant-status calls. Several of the same numbers also appear in a 2022 call schedule alleged against DoorDash. *See* ¶ 48.

**DoorDash's Responsibility for the Calls**

37. The challenged messages identified DoorDash's ordering operations and directed recipients to DoorDash's own support channel. DoorDash Escalated Support responded to Plaintiff's removal request and assigned an internal reference number. Together with the repeated merchant script, these facts support the allegation that DoorDash initiated and administered the challenged calling campaign.

38. DoorDash publicly describes the calling system that produced these messages. In its Merchant Support help center, DoorDash defines a robocall as "a phone call placed by an automated voice system to verify whether a restaurant is open." The help center states that DoorDash will try to reach the store up to three times and that the recipient answers by pressing 1 if the store is open or 2 if it is closed.[1] A December 3, 2025 post on DoorDash's engineering blog likewise states that, to confirm a merchant's hours, "DoorDash sends an automated phone call or robocall to the merchant," and describes DoorDash's legacy robocall system and its keypad-tone provider.[2] These are the same open-or-closed keypad prompts recorded in Plaintiff's voicemails.

39. On information and belief, DoorDash's merchant communication systems associated the Subject Number with a merchant contact record and repeatedly generated the merchant-status calls. The particular merchant record, the source of that association, and the mechanism for suppressing the calls are within DoorDash's possession.

40. Plaintiff primarily alleges direct liability for calls initiated by DoorDash. To the extent a service provider transmitted the calls, Plaintiff alleges on information and belief that it

---

[1] *Verifying Store Availability on DoorDash with Robocalls*, DoorDash Help Ctr., https://help.doordash.com/en-us/merchants/article/robocalls-to-verify-store-hours-open-status (last visited Nov. 5, 2026).

[2] Anand Viswanathan, *Building a GenAI-Powered Voice Assistant for Verifying Store Hours*, *in Part 4: DoorDash 2025 Summer Intern Projects*, Careers at DoorDash (Dec. 3, 2025), https://careersatdoordash.com/blog/part-4-doordash-2025-summer-intern-projects/ (last visited Nov. 5, 2026).

did so at DoorDash's direction, using the merchant contact information and message content DoorDash supplied or approved and within the scope of that assignment.

**Concrete Harm and Knowledge**

41. Plaintiff actually received the challenged calls and resulting voicemail messages on his personal cellular telephone. The repeated calls intruded on his privacy and interrupted his use and enjoyment of that telephone.

42. Plaintiff is a young entrepreneur who owns and operates a marketing company. He runs the business from his home in Miami Beach, Florida, and serves clients who may need to reach him on short notice.

43. Running the business requires Plaintiff to maintain a consistent professional routine. He regularly works late into the night and sleeps through the early-morning hours. He keeps his cellular telephone on and available overnight so that a client can reach him if an urgent business matter arises.

44. Plaintiff's friends, family, and personal contacts know not to call him during the early-morning hours unless there is an emergency. As a result, a call to Plaintiff's cellular telephone in the early morning often signals that something urgent has happened, such as a time-sensitive crisis involving a client.

45. DoorDash's calls arrived in exactly that window. Most of the at least 856 documented calls were placed between approximately 8:00 a.m. and 9:00 a.m., frequently at or near 8:00 a.m. On many mornings more than one call arrived, and on February 19, 2026, six calls arrived from four different numbers. The vast majority of the calls that were not blocked rang inside Plaintiff's home while he was asleep and disturbed his sleep, and

many reasonably led him to believe that an urgent business matter or client emergency was unfolding. Time and again, he was forced to break his sleep and his routine to check the telephone, only to find a prerecorded message about a store with which he had no connection.

46. Plaintiff could not stop the calls himself. DoorDash placed them from at least 37 rotating numbers. When Plaintiff blocked one number, the calls came from another, and even calls from blocked numbers deposited prerecorded messages in his telephone's blocked-voicemail folder; at least 197 of the documented calls did so. Plaintiff could not silence the telephone overnight without cutting himself off from the clients who depend on reaching him.

47. DoorDash's high-frequency, early-morning calling campaign directly caused Plaintiff significant professional anxiety, repeated and profound disruption of his sleep, and lost working time. He spent time reviewing and deleting unwanted voicemails, blocking calling numbers, and contacting DoorDash to stop the calls. The campaign substantially interfered with Plaintiff's use, peace, and quiet enjoyment of his home and his private cellular telephone line during the hours he reserves for rest.

48. DoorDash knew all of this. In October 2024, Plaintiff told DoorDash in writing that it was calling him every morning at 8:00 a.m. and demanded that the calls stop. He sent DoorDash a screenshot of his call log identifying an 8:00 a.m. DoorDash call and provided the Subject Number. DoorDash responded that the calls were "not at all right," assured him that no further calls would be made, and later confirmed under reference number 656659996 that he would receive no further calls. From that point forward, DoorDash knew that the Subject Number belonged to a private individual who was not its

merchant, that the calls were reaching him at home in the early morning, and that he did not want them. DoorDash nevertheless placed at least 842 more calls to the Subject Number over the following twenty-two months.

49. DoorDash assured Plaintiff in writing on October 5, 2024 that no further calls would be made, and confirmed in writing on October 28, 2024, under a numbered reference, that his request had been processed and that he would receive no further calls. At least 842 of the documented calls reached Plaintiff after the October 5 assurance, and at least 824 after the October 28 confirmation. Calls carrying the same prerecorded prompts reached him on the two days following the October 28 confirmation and continued for nearly two years. DoorDash's continued calls to the Subject Number after that notice and confirmation were knowing or willful.

50. Plaintiff's counsel sent DoorDash a written demand that it stop calling the Subject Number, which DoorDash's registered agent received on or about July 10, 2026. Plaintiff's records reflect at least 37 additional prerecorded merchant calls to the Subject Number between July 11 and August 25, 2026. On or about August 14, 2026, Plaintiff's counsel informed DoorDash's counsel that the calls were continuing; at least 11 of those 37 calls were placed after that notice. *See* Exhibit I. The last call Plaintiff has identified was placed on August 25, 2026. Because DoorDash's October 2024 written assurances did not stop the calls, the calls continued for nearly two years, and the same calling program reached Plaintiff from dozens of different numbers, there is a real and immediate risk that the calls will resume absent an injunction. That risk is ongoing: as alleged below, public call-reporting data show that numbers used to call Plaintiff continued placing calls to consumers through at least November 2026.

## CLASS ACTION ALLEGATIONS

51. Plaintiff brings this action under Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) on behalf of the following proposed class (the "Class") and subclasses (the "Subclass" and the "Florida Subclass"):

**Merchant Robocall Opt-Out Class**: All natural persons in the United States who, during the four years before filing through the date of class certification, received on a number assigned to cellular telephone service an artificial or prerecorded voice call made by DoorDash or on its behalf that asked whether a merchant location was open or closed or warned that the location could not receive DoorDash orders, more than ten business days after DoorDash received from that person a request to stop those calls to that number or a report that the number was an incorrect contact for the merchant.

**Confirmed Removal Subclass**: All members of the Class who received at least one qualifying Class call after DoorDash confirmed to that person in writing that those calls to that number would stop or that the number would be removed from the merchant-status calling program.

**Florida Subclass**: All members of the Subclass who resided in Florida when they received one or more qualifying Class calls after DoorDash's written confirmation described in the Subclass definition.

52. Excluded from the Class, the Subclass, and the Florida Subclass are DoorDash, its parents, subsidiaries, affiliates, and agents, any entity in which DoorDash has a controlling interest, and their officers and directors; Plaintiff's counsel; the assigned judicial officers and their immediate families; persons whose claims concerning the

challenged calls have been released or finally adjudicated; and the legal representatives, successors, and assigns of any excluded person. Calls expressly authorized by the recipient after the request or confirmation and before the call are excluded, as are emergency calls.

53. A request or report may have been made orally or in writing, and its existence may be proven through DoorDash's records or other evidence. Every Subclass call must also satisfy the Class's ten-business-day interval. Plaintiff individually seeks relief for all challenged calls made to him without prior express consent, including calls placed before, or within ten business days after, his requests. Plaintiff is a member of both the Class and the Subclass; for example, the June 24, 2026 call described in paragraph 27 was placed more than ten business days after his October 2024 requests and after DoorDash's October 28, 2024 written confirmation.

54. Plaintiff reserves the right to modify the Class, Subclass, and Florida Subclass definitions, or to propose additional subclasses, as discovery and further investigation warrant.

55. Numerosity. On information and belief, the members of the Class, the Subclass, and the Florida Subclass are so numerous that joinder of all of them is impracticable. DoorDash's merchant-status calls are part of a nationwide program that uses a recurring prerecorded script, and the script directs recipients who received the call in error to an opt-out process, reflecting that DoorDash anticipated misdirected calls. Other recipients have alleged repeated prerecorded merchant-status calls and unsuccessful efforts to stop them, and public call-reporting data reflect that six of the numbers used to call Plaintiff have together placed more than 15,000 calls to other consumers, as described below. On

information and belief, the Class consists of at least several hundred persons, and the Subclass and the Florida Subclass each consist of at least forty persons. The precise number of members of the Class and of each subclass can be determined from DoorDash's support, opt-out, written-confirmation, and call records, which are in DoorDash's possession.

56. Other recipients have publicly alleged unsolicited prerecorded DoorDash calls to their cellular telephones. In *Binbek v. DoorDash, Inc.*, No. 1:22-cv-03729 (N.D. Ill.), Complaint, ECF No. 1 (July 19, 2022), paragraphs 2, 14, 17–19, 24–28, Asha Binbek alleged approximately 203 artificial or prerecorded voice calls among at least 242 total calls, lack of prior express consent, and continued calling despite stop requests. Her call schedule also listed several numbers appearing in Plaintiff's records, including (415) 805-6642, (415) 991-6684, (415) 275-6644, (415) 996-1483, (628) 800-0576, and (628) 600-0930.

57. In *Johnson v. DoorDash, Inc.*, No. 3:24-cv-06449 (N.D. Cal.), Complaint, ECF No. 1 (September 13, 2024), paragraphs 13–21, Cynthia Johnson alleged nearly daily artificial or prerecorded calls seeking restaurant enrollment and tablet setup, although she did not own or operate a restaurant. She alleged that the calls continued after she contacted DoorDash and after DoorDash undertook to close the account to stop the calls.

58. In *Wallace v. DoorDash, Inc.*, No. 2:24-cv-10163 (C.D. Cal.), Complaint, ECF No. 1 (November 25, 2024), an individual action, Jasson Wallace alleged hundreds of artificial or prerecorded calls without consent, including calls after he followed DoorDash's opt-out instructions. The alleged message described an offline tablet, warned that customers could no longer place orders, asked whether the store was open or closed, and directed

the recipient to DoorDash's opt-out webpage—substantially the same merchant-status content alleged here.

59. In *Sahito v. DoorDash, Inc.*, No. 2:18-cv-08451 (D.N.J.), Complaint, ECF No. 1 (April 27, 2018), paragraphs 25–30, the plaintiff alleged that DoorDash replied in writing to his text-message stop request that "[n]o more messages will be sent," and then continued sending him text messages.

60. Other recipients report that DoorDash's assurances did not stop the calls. According to a Courthouse News Service report published April 23, 2025, Phillip Lendenbaum, a Maryland resident, alleged in a federal complaint that DoorDash called his cellular telephone daily with the same prerecorded message after a hotel he formerly managed listed his number as its DoorDash contact; that several DoorDash supervisors promised to fix the problem; and that the calls continued, including from new numbers after he blocked earlier ones.[3]

61. Public call-reporting data likewise show that the numbers used to call Plaintiff reach consumers at scale. RoboKiller, a commercial call-blocking service, publishes a lookup page for each telephone number its users receive calls from. As of November 5, 2026, RoboKiller's pages for six of the numbers that called Plaintiff, (415) 969-2065, (510) 901-5366, (650) 830-0392, (415) 877-5866, (628) 800-0149, and (415) 991-6684, which together account for at least 153 of the calls listed in Table 1, reported a combined 15,350

[3] *Maryland Man Sues DoorDash over Telephone Onslaught*, Courthouse News Serv. (Apr. 23, 2025), https://www.courthousenews.com/maryland-man-sues-door-dash-over-telephone-onslaught/ (last visited Nov. 5, 2026).

calls from those numbers to RoboKiller users. Each page reported that number's most recent call between October 18 and November 5, 2026, after the last call to Plaintiff. RoboKiller categorized (415) 969-2065 and (415) 877-5866 as "Food Delivery," and five of the six pages assigned the number a "Negative" user reputation. On July 28, 2026, a RoboKiller user reported that (415) 877-5866 "sent a text first and then called" and that the user did not "even use doordash."[4]

62. These allegations, together with Plaintiff's experience, support the inference that unwanted prerecorded merchant calls and unsuccessful efforts to stop them were not unique to Plaintiff. Whether recipients submitted stop requests or received written confirmations, and whether later calls followed, can be determined from DoorDash's records.

63. Class members may be identified from DoorDash's records by matching stop requests, wrong-number reports, support tickets, written confirmations, and affected numbers to later call records, scripts, and delivery or voicemail dispositions.

---

[4] *See (415) 969-2065*, RoboKiller Lookup, https://lookup.robokiller.com/p/415-969-2065 (last visited Nov. 5, 2026); *(510) 901-5366*, RoboKiller Lookup, https://lookup.robokiller.com/p/510-901-5366 (last visited Nov. 5, 2026); *(650) 830-0392*, RoboKiller Lookup, https://lookup.robokiller.com/p/650-830-0392 (last visited Nov. 5, 2026); *(415) 877-5866*, RoboKiller Lookup, https://lookup.robokiller.com/p/415-877-5866 (last visited Nov. 5, 2026); *(628) 800-0149*, RoboKiller Lookup, https://lookup.robokiller.com/p/628-800-0149 (last visited Nov. 5, 2026); *(415) 991-6684*, RoboKiller Lookup, https://lookup.robokiller.com/p/415-991-6684 (last visited Nov. 5, 2026).

64. Commonality. Questions of law and fact common to the Class include: (a) whether DoorDash's merchant-status calls used an artificial or prerecorded voice; (b) whether those calls were made for emergency purposes; (c) how DoorDash recorded and processed stop requests and wrong-number reports and communicated them to the systems and vendors placing the calls; (d) whether DoorDash maintained and applied a suppression process for affected numbers; (e) whether DoorDash continued placing prerecorded merchant-status calls to numbers after receiving such requests; (f) whether DoorDash's violations were knowing or willful; and (g) whether injunctive and declaratory relief is warranted. Common questions specific to the Subclass include how DoorDash issued written removal confirmations and whether its systems suppressed confirmed numbers.

65. Typicality. Plaintiff's claims are typical of the claims of the Class because he asked DoorDash to stop its merchant-status calls, continued to receive prerecorded merchant-status calls more than ten business days later, and seeks statutory damages under the same provision as every Class member. His claims are typical of the claims of the Subclass because DoorDash confirmed to him in writing that the calls would stop and then continued placing them.

66. Adequacy. Plaintiff's interest in establishing liability and obtaining compensation for the challenged calls is aligned with the Class. He will fairly and adequately protect its interests and has retained Consumer Rights Law, PLLC to prosecute this action. Plaintiff has no interests antagonistic to those of the Class or Subclass. His counsel is experienced in consumer-protection litigation, including TCPA claims, and will vigorously prosecute this action.

67. Predominance. Common questions predominate over individual ones. The content and timing of stop requests and written confirmations can be shown through DoorDash's records and the communications themselves, including recurring response templates. Call records, campaign identifiers, recordings, scripts, and delivery or voicemail dispositions can establish which later calls were placed, their content, and the voice used. Records of any later permissions can be compared against call dates. Any individual questions concerning consent can be addressed through these common records and do not predominate.

68. Subscriber and cellular-service records can be matched to the number and date of each qualifying call to identify its recipient.

69. Superiority. A class action is superior to other available methods for adjudicating this controversy. The statutory damages available to each Class member are modest relative to the cost of individual litigation against DoorDash, and resolving the common questions about DoorDash's calling and suppression practices in one proceeding promotes efficiency and consistent results.

70. Injunctive and Declaratory Relief. DoorDash has acted or refused to act on grounds that apply generally to the Class by continuing to place prerecorded merchant-status calls to numbers after receiving requests that the calls stop. Class members whose numbers remain subject to DoorDash's merchant-status calling program face a risk that the calls will recur. Final injunctive relief requiring DoorDash to suppress those numbers from that program after a qualifying stop request, and corresponding declaratory relief, is therefore appropriate for the Class as a whole under Rule 23(b)(2). Plaintiff seeks damages for the Class and Subclass under Rule 23(b)(3).

71. Florida Subclass. The requirements of Rule 23(a) and Rule 23(b)(3) are also satisfied for the Florida Subclass as to Count II. Questions of law and fact common to the Florida Subclass include: (a) whether DoorDash continued placing prerecorded merchant-status calls to Florida residents' cellular telephones after confirming in writing that the calls would stop; (b) whether those continued calls were intentional; (c) whether continuing such calls after a written confirmation is highly offensive to a reasonable person; and (d) whether DoorDash's conduct warrants punitive damages. Plaintiff's claim is typical of the Florida Subclass because he, like every Florida Subclass member, received such calls in Florida after DoorDash's written confirmation, and he will fairly and adequately protect the Florida Subclass's interests. These questions turn on DoorDash's uniform confirmed-removal practices and records and predominate over any individual questions, and a class action is superior for the reasons stated above.

**COUNT I**

**Artificial or Prerecorded Voice Calls to Cellular Telephones**

**Violation of 47 U.S.C. § 227(b)(1)(A)(iii)**

**On Behalf of Plaintiff, the Class, and the Subclass**

72. Plaintiff incorporates paragraphs 1 through 71.

73. Section 227(b)(1)(A)(iii) prohibits a person from making a call using an artificial or prerecorded voice to a telephone number assigned to cellular telephone service without the called party's prior express consent, unless an applicable exception permits the call.

74. DoorDash made the challenged calls to Plaintiff's Subject Number and, on information and belief, to Class members' cellular telephone numbers using artificial or prerecorded voices.

75. Plaintiff did not give prior express consent to receive the challenged merchant-status calls. As to the Class, Plaintiff alleges that DoorDash placed artificial or prerecorded voice calls after the recipients asked DoorDash to stop the calls (and, for the Subclass, after DoorDash confirmed in writing that the calls would stop) and that the recipients had given no effective prior express consent covering those later calls.

76. Alternatively, to the extent any revocable consent ever covered the calls to Plaintiff or Class members, it was withdrawn by their requests that the calls stop, and DoorDash continued calling more than ten business days after receiving those requests.

77. The calls to Plaintiff concerned store operations and order availability. Plaintiff alleges that the challenged calls to him and the Class were made for nonemergency purposes and that no applicable exemption authorized them.

78. DoorDash placed the challenged calls after receiving notice that the recipients did not want them and, as to the Subclass, after confirming in writing that the calls would stop. Plaintiff therefore seeks an increase of the damages award, up to three times the otherwise recoverable amount, for each violation proven to have been knowing or willful. 47 U.S.C. § 227(b)(3).

79. Plaintiff and each Class member are entitled to recover the greater of their actual monetary loss or $500 in damages for each violation. 47 U.S.C. § 227(b)(3)(B).

80. Plaintiff and the Class are also entitled to an injunction under 47 U.S.C. § 227(b)(3)(A) requiring DoorDash to suppress their numbers from its merchant-status calling program after receiving a qualifying stop request, absent subsequent express authorization, and to a declaration that DoorDash's continued prerecorded merchant-status calls after such requests violate 47 U.S.C. § 227(b)(1)(A)(iii).

## COUNT II

### Common Law Invasion of Privacy – Intrusion Upon Seclusion

### On Behalf of Plaintiff and the Florida Subclass

81. Plaintiff incorporates paragraphs 1 through 71.

82. Florida recognizes a common law cause of action for invasion of privacy by intrusion: an intentional intrusion, physical or electronic, into a place or matter in which the plaintiff has a reasonable expectation of privacy, where the intrusion would be highly offensive to a reasonable person. *See Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003); *Agency for Health Care Admin. v. Associated Indus. of Fla., Inc.*, 678 So. 2d 1239, 1252 n.20 (Fla. 1996). Repeated telephone calls invade privacy when they are "repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence." Restatement (Second) of Torts § 652B cmt. d (Am. L. Inst. 1977).

83. Plaintiff's home, where he sleeps, is a private quarter in which he has a reasonable expectation of privacy, and that expectation is at its height during the early-morning hours he reserves for sleep. His personal cellular telephone and the voicemail inbox stored on it are private spaces within that home, maintained for his own personal and

professional use. He has given the Subject Number only to persons of his choosing and those persons know not to call him during early-morning hours except in an emergency. The Subject Number was never DoorDash's merchant contact, and Plaintiff never invited DoorDash into his home or onto his telephone for any purpose related to the calls.

84. Each call was an electronic intrusion into Plaintiff's private quarters. Each call deposited an unsolicited prerecorded message in his private voicemail inbox, and the vast majority of the calls that were not blocked also caused his telephone to ring inside his home while he slept. DoorDash also defeated Plaintiff's efforts to exclude it by calling from at least 37 rotating numbers, so that blocking a number did not stop the calls, and by leaving messages even in his blocked-voicemail folder.

85. The intrusion was intentional. DoorDash's systems deliberately and repeatedly dialed the Subject Number and delivered prerecorded messages to it. By no later than October 5, 2024, DoorDash had actual, written notice that the Subject Number belonged to a private individual who was not its merchant and that he wanted the calls to stop. DoorDash acknowledged that notice, promised that the calls would stop, and confirmed in writing on October 28, 2024, under reference number 656659996, that Plaintiff would receive no further calls. It then continued to call, including after Plaintiff's counsel served a written demand on or about July 10, 2026, and after counsel notified DoorDash's counsel on or about August 14, 2026, that the calls were continuing. DoorDash therefore intended each intrusion or knew that each intrusion was substantially certain to result from its conduct.

86. The intrusion would be highly offensive to a reasonable person because of the combination of the following circumstances:

(a) Volume. DoorDash placed at least 856 prerecorded calls to the Subject Number from September 20, 2024 through August 25, 2026, an average of more than one call per day for nearly two years, with multiple calls on many mornings and as many as six in a single day.

(b) Timing. Most of the calls were placed at or near 8:00 a.m., reaching Plaintiff inside his home during hours reserved for sleep, repeatedly disturbing his sleep and, on many occasions, reasonably signaling to him that an urgent matter was unfolding.

(c) Defiance of written assurances. DoorDash continued the campaign for nearly two years after confirming in writing, under reference number 656659996, that the calls would stop. At least 842 calls followed DoorDash's October 5, 2024 written assurance, and at least 824 followed its October 28, 2024 written confirmation. At least 37 calls followed counsel's written demand, and at least 11 followed counsel's August 14, 2026 notice to DoorDash's counsel.

(d) No legitimate purpose. The calls served no legitimate purpose as to Plaintiff. They did not seek to collect any debt from him, did not concern any order, delivery, or account of his, and concerned a business he did not own or represent, so that he could do nothing to satisfy them.

(e) Circumvention. DoorDash rotated its calling numbers, defeating Plaintiff's efforts to block the calls.

87. Taken together, these circumstances amount to a course of hounding that became a substantial burden to Plaintiff's existence. DoorDash's conduct is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency.

88. DoorDash's intrusion upon the Florida Subclass followed the same pattern. Each Florida Subclass member received prerecorded merchant-status calls on a personal cellular telephone in Florida after asking DoorDash to stop them and after DoorDash confirmed in writing that the calls would stop. Whether DoorDash's confirmed-removal practices and its continued calling to confirmed numbers constitute an intentional and highly offensive intrusion are questions common to the Florida Subclass that DoorDash's records can resolve.

89. As a direct and proximate result of DoorDash's intrusion, Plaintiff suffered repeated sleep loss, anxiety and emotional distress, lost time and diminished ability to conduct his business, and the loss of the use, peace, and quiet enjoyment of his home and his private telephone line. Plaintiff and the Florida Subclass are entitled to compensatory damages in an amount to be determined at trial and, at a minimum, nominal damages.

90. DoorDash continued the intrusion with actual knowledge that it was unwanted and wrongful, and after promising in writing to stop. Its conduct constitutes intentional misconduct or, at a minimum, gross negligence within the meaning of section 768.72(2), Florida Statutes. Plaintiff and the Florida Subclass are therefore entitled to punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, the Subclass, and the Florida Subclass, requests judgment against DoorDash and the following relief:

a. Certification of the Class and Subclass under Rule 23(a), Rule 23(b)(3) for damages, and Rule 23(b)(2) for injunctive and declaratory relief; certification

of the Florida Subclass under Rule 23(a) and Rule 23(b)(3) as to Count II; appointment of Plaintiff as representative of the Class, the Subclass, and the Florida Subclass; and appointment of Plaintiff's counsel as class counsel under Rule 23(g);

b. The greater of actual monetary loss or statutory damages of $500 for each proven violation, under 47 U.S.C. § 227(b)(3);

c. An increase of the award to no more than three times the otherwise recoverable amount for violations found knowing or willful, without duplicate recovery;

d. A declaration that DoorDash's continued prerecorded merchant-status calls to cellular telephone numbers after receiving requests that the calls stop violate 47 U.S.C. § 227(b)(1)(A)(iii);

e. An injunction under 47 U.S.C. § 227(b)(3)(A) requiring DoorDash to suppress the numbers of Plaintiff and Class members from its merchant-status calling program after a qualifying stop request, absent subsequent express authorization;

f. On Count II, compensatory damages for Plaintiff and the Florida Subclass, including damages for emotional distress and for loss of the use and enjoyment of their homes and telephones, or in the alternative nominal damages;

g. On Count II, punitive damages in an amount to be determined at trial;

h. Taxable costs, prejudgment interest to the extent permitted, and postjudgment interest as authorized by law; and

i. Such other relief as the Court determines to be proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: November 19, 2026

Respectfully submitted,

**CONSUMER RIGHTS LAW, PLLC**
By: *<u>/s/ Monique N. Reyes</u>*
Monique N. Reyes, Esq.
Florida Bar No. 1026823
848 Brickell Avenue, PH5
Miami, FL 33131
Telephone: (786) 360-7697
Email: monique@consumerrights.law

*Counsel for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**

Case No. 1:26-cv-27941-KMM

CLASS ACTION

ZACKARY MULLER, *individually and on behalf of all others similarly situated,*

Plaintiff,

v.

DOORDASH, INC.,

Defendant.

_______________________________________/

## INDEX OF EXHIBITS TO PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

| **Exhibit** | **Description** | **Complaint ¶** | **Complaint Page** |
|---|---|---|---|
| A | DoorDash Escalated Support email, October 28, 2024, 5:55 p.m. (Ref. No. 656659996) | 21 | 6 |
| B | Incoming call labeled "DoorDash" and displayed merchant-status voicemail | 28 | 8 |
| C | Prerecorded merchant-status voicemails, September 20, 2024 and June 24, 2026 | 16, 27 | 5, 7 |
| D | DoorDash Support chats, October 5, 2024 (first and second chats) | 19 | 6 |
| E | Voicemail list, March 2026 (multiple daily entries) | 30 | 8 |
| F | Voicemail list, July 2026 | 31 | 8 |
| G | Blocked-voicemail list, July 2026 | 32 | 8 |
| H | Voicemail lists, February 17–23, 2026 (six calls on February 19, 2026) | 30 | 8 |
| I | Voicemail list, August 7–22, 2026; voicemail transcript, August 24, 2026; blocked-voicemail list, August 1–25, 2026 | 18, 50 | 5, 15 |

# EXHIBIT A

## DoorDash Escalated Support Email, October 28, 2024, 5:55 p.m. (Reference No. 656659996)

**support@doordash.com** <support@doordash.com> Mon, Oct 28, 2024, 5:55 PM

to me

Hi Zack,

Thank you for reaching out to DoorDash! This is Narendra with DoorDash Escalated Support.

As per your request I have submitted the feedback as you will not receive any calls from doordash in future, your request is submitted successfully you will not recieve any calls from now.

Your reference number for this request is 656659996.

Best,
Narendra
DoorDash Support
DoorDash Help

**EXHIBIT B**

**Incoming Call Labeled "DoorDash" and Displayed Merchant-Status Voicemail**



**EXHIBIT C**

**Prerecorded Merchant-Status Voicemail, September 20, 2024**



**EXHIBIT C continued**

**Prerecorded Merchant-Status Voicemail, June 24, 2026**



# EXHIBIT D

## DoorDash Support Chat, October 5, 2024 (First Chat)



**EXHIBIT D continued**

**DoorDash Support Chat, October 5, 2024 (Second Chat)**



# EXHIBIT E

## Voicemail List, March 2026 (Multiple Daily Entries)



**EXHIBIT F**

**Voicemail List, July 2026**



**EXHIBIT G**

**Blocked-Voicemail List, July 2026**



# EXHIBIT H

## Voicemail List, February 17–19, 2026



**EXHIBIT H continued**

**Voicemail List, February 19–23, 2026**



# EXHIBIT I

## Voicemail List, August 7–22, 2026



**EXHIBIT I continued**

**Voicemail Transcript, August 24, 2026, 8:01 a.m., (415) 843-8803**



**EXHIBIT I continued**

**Blocked-Voicemail List, August 1–25, 2026**

